UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT SIMMS, SR.,　　　　　　　:
　　　　　Petitioner　　　　　　　:
　　　　　　　　　　　　　　　　　: CASE NO. 1:16-CV-1527
　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:　　(Judge Caldwell)
L.J. ODDO, COMPLEX WARDEN　　　　:
　　　　　Respondent　　　　　　　:

:

*M E M O R A N D U M*

I.　*Introduction*

　　　　Robert Simms, Sr., an inmate at USP-Allenwood, White Deer, Pennsylvania, has filed a pro se petition under 28 U.S.C. § 2241 challenging the decision of the United States Parole Commission to deny him parole. Simms is a DC Code offender, having been convicted in the District of Columbia Superior Court of first degree child sex abuse and a violation of the Bail Reform Act. He claims the Commission acted arbitrarily in relying on the following factors to deny him parole: (1) that his release would endanger public safety, even though, as Petitioner alleges, he is subject to a detainer to serve the remaining fourteen years on a Virginia conviction; (2) that his offense involved "unusual cruelty" to the victim; and (3) that he has failed to complete programs while incarcerated that would have indicated the risk he posed to the community had been lessened, even though USP-Allenwood does not offer sex offender treatment.

Finally, Petitioner claims the Commission acted arbitrarily when the guidelines called for a rehearing in twelve months after both his initial hearing and his rehearing. Yet the Commission relied on the same factors at both hearings to put off a rehearing for 36 months the first time and then sixty months the second time. Petitioner contends reliance on the same factors to extend his imprisonment for differing amounts of time indicates the Commission acted arbitrarily.[1]

II. *Background*

On June 23, 1999, the D.C. Superior Court sentenced Simms to 36 years for first degree child sex abuse and 18 months consecutively for a violation of the Bail Reform Act. (Doc. 5-1, ECF pp. 4-5, BOP SENTRY Report, Sentence Monitoring Computation Data). His parole eligibility date was October 10, 2010. (*Id.*, at ECF p. 6, "parole eligibility" date).

Petitioner's "prehearing assessment" for his initial parole hearing contained the following information. On June 26, 1997, when the victim was 10 or 11 years old, Simms entered her bedroom and engaged in vaginal intercourse then cunnilingus with her, despite her statement that "[n]o, I don't want to do this." (Doc. 5-1, ECF p. 7). At this time, Simms had worked for about three years doing odd jobs around the house where the victim and her family lived. (*Id.*) Simms over time had become a friend of the family while performing work for them. (*Id.*, at ECF p. 7).

---

[1] The District of Columbia Board of Parole has been abolished, and the United States Parole Commission now has jurisdiction over parole decisions for District of Columbia offenders. See D.C. Code § 24-131(a)(1) and (b).

The victim said that she and Simms had developed a relationship over time, which had led to him pressuring her to have sex, and her eventually succumbing to his advances. (*Id.*) She reported that for a period of time, they had sex every other day at its peak, frequently while her father and brother were in the house. (*Id.*) The victim also reported that on several occasions when she resisted Simms' advances and told him he was hurting her, he persisted and told her "I'm almost done." (*Id.*, ECF pp. 7-8) She reported that she did not want to engage in sexual activity with Simms. (*Id.*, ECF p. 8)

Simms was interviewed and stated "maturity is not an age. We all mature at different levels," and he told the interviewer that the victim was God's gift to him. (*Id.*) At the initial hearing, he also stated that some of the information in the file was incorrect. According to him, he did not force himself upon the young girl, she was fifteen years old when he had sex with her, and she was asking him for it. (*Id.*, ECF p. 12).

The initial hearing was held on April 26, 2010, in advance of his parole eligibility date. (*Id.*, ECF p. 11). The hearing examiner recommended that parole be denied and that a rehearing be held in twelve months, April 2011. (Id., ECF p. 13). A reviewing examiner agreed that parole should be denied but recommended that a rehearing be put off for 36 months, until October 2013. The reviewer reasoned in part: (1) Simms continued to minimize the severity of his crimes by stating the sexual relations were consensual; (2) his conduct involved ongoing criminal behavior and exceptional cruelty to the victim; and (3) he has completed no programming indicating his risk to the community had lessened. (*Id.*, ECF at p. 14).

In its Notice of Action, dated June 29, 2010, denying parole, the Commission adopted this recommendation and continued Petitioner for a rehearing in October 2013

3

after the service of 36 months from the parole eligibility date of October 10, 2010. (*Id.*, ECF at p. 20). The Commission provided the following reasons:

> The Commission has applied the D.C. Board of Parole's 1987 guidelines to the initial parole decision in your case. You have a total point score of 4 under the 1987 guidelines for D.C. Code offenders. The guidelines indicate that parole should not be granted at this time. After review of all relevant factors and information presented, a departure from the guidelines at this consideration is not found warranted.
>
> The guidelines for the time to rehearing indicate that your next hearing should be scheduled within 12 months. A departure from these guidelines is found warranted because the Commission believes you are a more serious parole risk than shown by your DC point score because your offense conduct involved ongoing criminal behavior in the community and unusual cruelty to your victim. Specifically, your current offense behavior involved the repeated sex abuse of a minor girl that was more than 30 years younger than you. The Commission finds that your victim was especially vulnerable. In addition to this, you have a prior record of violence in the community that includes a prior conviction from Virginia for Rape from 1965. In addition to your rape conviction (which also included an armed robbery), you have an Assault and Battery conviction from 1975, an Armed Robbery Conspiracy conviction from 1978 and three prior convictions for possessing a weapon. Your history of sex offenses, other crimes of violence and weapons possession spans over a 30 year period indicating to the Commission that your criminal behavior is ongoing and that you remain a risk to the community. In addition, you have not completed any significant programs while serving the current sentence that would indicate to the Commission that the risk that you pose to the community has lessened.

(Doc. 5-1, at ECF p. 20).

On August 19, 2013, Simms had a rehearing. (Doc. 5-1, at ECF p. 25). On August 20, 2013, the hearing examiner filled out a post-hearing assessment form. (*Id.*) The examiner reported that when asked, Simms said he did "not consider himself a sex offender and has not taken any education or counseling programs since the last hearing."

4

(*Id.*, at ECF p. 26). The examiner also noted that Petitioner "pointed out that he has a detainer with the State of Virginia for a parole violation and does not understand why the Commission refuses to release him to that term." (*Id.*) The examiner replied that the Commission has no "jurisdiction over the Virginia case and any decision to release on parole will be made on the merits of the current conviction and his risk to the community." (*Id.*)[2]

In its Notice of Action, dated September 3, 2013, denying parole, the Commission continued Petitioner for a rehearing in August 2018 after the service of 60 months from the last hearing. (*Id.*, at ECF p. 28). The reasons given were essentially the same as offered in the previous notice of action:

> Your grid score at your last hearing was 4 points. You continue to be scored under the 1987 guidelines of the D.C. Board of Parole.
> Under the guidelines for DC. Code offenders, your current Grid Score includes -1 point for ordinary program achievement since your last hearing.
>
> With adjustments reflecting your institutional record since your last hearing, your current Grid Score is 3. You continue to be scored under the 1987 guidelines for the D.C. Board of Parole. The guidelines indicate that parole should be granted at this time. However, a departure from the guidelines at this consideration is found warranted because the Commission finds there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety. You are a more serious parole risk than shown by your grid score because your offense conduct involved ongoing criminal behavior in the community and unusual cruelty to your victim. Specifically, your current offense behavior involved the repeated sex abuse of a minor girl that was more than 30 years younger than you. The sexual abuse and rape of the victim took place over a 3-year period when you had made friends with the family

---

[2] Petitioner has attached to the 2241 petition a warrant, dated August 25, 1997, from the Virginia Parole Board, (Doc. 1, at ECF p. 17), which he asserts is acting as a detainer against him. The warrant indicates Petitioner was convicted on October 1, 1965, and released from confinement on a 39-year sentence on October 16, 1990. The warrant seeks his custody on parole violations.

5

> and performed handiwork for them. The Commission finds that your victim was especially vulnerable. In addition to this, you have a prior record of violence in the community that includes a prior conviction from Virginia for Rape from 1965. In addition to your rape conviction (which also included an armed robbery), you have an Assault and Battery conviction from 1975, an Armed Robbery Conspiracy conviction from 1978 and three prior convictions for Possessing a Weapon. Your history of sex offenses, other crimes of violence and weapons possession spans over a 30-year period indicating to the Commission that your criminal behavior is ongoing and that you remain a risk to the community. In addition, because you do not consider yourself a sex offender you have failed to complete any significant programs while serving the current sentence that would indicate to the Commission that the risk that you pose to the community has lessened.

(*Id.*, at ECF p. 28).

III. *Discussion*

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correc. Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). An inmate has no liberty interest in being released on parole under District of Columbia statutory or regulatory law dealing with parole. *Ellis v. District of Columbia,* 84 F.3d 1413, 1416, 1420 (D.C. Cir. 1996). Instead, the Commission is vested with discretion to determine a District of Columbia convict's eligibility for parole. *McRae v. Hyman,* 667 A.2d 1356, 1357 (D.C. 1995).

A federal court does have some authority to review a Commission parole decision, but that authority is limited. *Furnari v. Warden*, 218 F.3d 250, 254 (3d Cir. 2000). The standard applied in such a review "'is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the

inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" *Id.* (quoting *Zannino v. Arnold*, 531 F.2d 687, 691 (3d Cir. 1976)). The review should consider whether the Commission "'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.'" *Id.* (quoting *Zannino*, 531 F.2d at 690).

First, Simms claims the Commission acted arbitrarily in reasoning that his release would endanger public safety when he is subject to a detainer to serve the remaining fourteen years on a Virginia conviction. Simms contends there would be no danger to the public if he were paroled from his D.C. offenses because he would be incarcerated on his Virginia conviction.

Respondent counters that, as the examiner informed Petitioner at his August 2013 rehearing, the Commission had no jurisdiction over the Virginia case. Respondent adds that "[a]s a practical matter, because the Commission [does] not know how much time, if any, Simms would serve in the State of Virginia, it should not grant parole unless it found that he was in fact suitable for release on parole at that time." (Doc. 14, Resp't's supplemental brief at ECF p. 5). We cannot say the Commission acted irrationally in making this decision.

Second, Simms claims the Commission acted arbitrarily in reasoning that his offense involved "unusual cruelty" to the victim. In the September 2013 Notice of Action, the Commission said the offense involved unusual cruelty to the victim because Petitioner's behavior involved the repeated sex abuse of a minor girl that was more than 30 years younger than him and that the sexual abuse and rape of the victim took place

7

over a three-year period after Petitioner had made friends with her family and performed handiwork for them.

Simms says there was no unusual cruelty because the definition of cruelty is "the infliction of physical or mental pain or distress," and he was not convicted of crimes requiring the infliction of such pain as an element of the offense. He was instead convicted upon a government showing of "only the existence of an unlawful relationship which lasted for approximately 3 years." (Doc. 1, ECF at p. 6)(emphasis in original).

In his reply brief, he further argues that the Commission has the following inaccurate information: that on June 26, 1997, when the victim was 10 or 11 years old, he sexually abused her, and that he repeatedly sexually abused her when she was this age, and that she resisted his advances. (Doc. 12, at ECF p. 2) In contrast, Petitioner contends "the trial record does not support [the Commission's] contentions (1) that petitioner forced himself on the victim, (2) that the victim was 10 or 11 years old on June 26, 1997, and (3) that the victim was 10 or 11 years old when the illegal activity began." Instead, "the trial record shows that the victim was 15 years old when the illegal activity began, which is consistent with petitioner's statement to the parole examiner [citing Resp't's Ex. 3, page 2, Doc. 5-1, at ECF p. 12] and the victim's testimony at trial." (Doc. 12, at ECF p. 3). Simms contends he was only "recently" made aware that the Commission's files contain inaccurate information, namely, that Petitioner repeatedly sexually abused a 10- or 11-year-old girl. (*Id.*)

We disregard Petitioner's argument that the Commission files differ from the trial transcript. Simms should have provided us with the pertinent portions of the trial transcript if they supported his argument. It is also not true that he only recently

discovered the supposedly erroneous information, as at the time of his initial hearing in April 2010, he was stating that the information in the file concerning his sexual relationship with the victim was incorrect. At that time he was asserting the same contentions he is making now -- that he did not force himself upon her, that she was fifteen years old when he had sex with her, and she was asking him for it. (*Id.*, at ECF p. 12).

We agree with Respondent that the Commission could properly describe Simms' conduct with the victim as unusual cruelty.

Third, Simms claims the Commission acted arbitrarily in relying on his failure to complete programs while incarcerated that would have indicated the risk he posed to the community had been lessened; Simms says he could not complete such programs as USP-Allenwood does not offer sex offender treatment. In the September 2013 Notice of Action, the Commission stated that because Petitioner did not consider himself a sex offender he "failed to complete any significant programs while serving the current sentence" that would indicate to the Commission that the risk he posed to the community had lessened. (Doc. 5-1, at ECF p. 28).

In opposition, Respondent argues that it was not Simms' failure to participate in a sex offender program that led to denial of parole. Instead, it was his denial that he was a sex offender coupled with his failure "to participate in *any* programing to address risk (e.g., victim impact programming)," that led the Commission to decide that this factor counseled against parole. (Doc. 5, at ECF p. 15). It was his failure "to participate in *any* educational or psychological programing," (*Id.*, at ECF p. 16)(emphasis in original), that resulted in the decision. Respondent adds that the Commission did not specifically mandate that Simms participate in sex offender programming.

In his reply brief, Simms argues that he never denied being a sex offender, unless sex offender meant being a pedophile defined as being a person 16 or over sexually attracted to a child younger than 13. He also argues that the Commission did not specifically say he should participate in educational or psychological programming, only that he should participate in significant programs that would indicate to the Commission that the risk he posed to the community had lessened. His response was to apply for a sex offender program, which was not available at USP-Allenwood. Further, given Petitioner's educational level, a multi-skilled high school graduate with some college experience, any programming offered would be insignificant.

We agree with Respondent that it was not arbitrary for the Commission to rely on Petitioner's failure to participate in significant programing as a reason to deny him parole.[3]

Finally, Petitioner claims the Commission acted arbitrarily when the guidelines called for a rehearing in twelve months after both his initial hearing and his rehearing. Yet the Commission relied on the same factors at both hearings to put off a rehearing for 36 months the first time and then sixty months the second time. Petitioner contends reliance on the same factors to extend his imprisonment for such differing amounts of time indicates the Commission acted arbitrarily.

We reject Petitioner's argument. The statutory authority for the grant of parole, D.C. Code § 24-404(a), confers discretion on the Commission and does not create an "'expectancy of release.'" See *Ellis*, *supra*, 84 F.3d at 1415 (quoted case omitted). In

---

[3] In his reply brief to Respondent's supplemental brief, Petitioner adds the argument that his excellent work evaluations from his participation in QMS Electrical Shop and UNICOR Prison Industries is sufficient to show his participation in programming. (Doc. 15, ECF p. 3). We disagree. This is not the type of programming the Commission was referring to.

pertinent part, section 24-404(a) provides that the Commission may grant parole [w]henever it shall appear . . . that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, [and] that his or her release is not incompatible with the welfare of society . . . ." The Commission has to consider these factors at each hearing. It follows that the Commission's decision at his initial hearing to extend him for 36 months and then for 60 months at his rehearing, with both decision based on the same factors, was not arbitrary. *See Cunningham v. U.S. Dep't of Justice*, No. 06-CV-2321, 2007 WL 2566295, at *4 (M.D. Pa. Aug. 31, 2007)(the Commission is under a continuing obligation to release only those inmates with a reasonable probability of living in the community without violating the law so consideration of the same factors in twice denying parole was not arbitrary).[4]

*V.       Conclusion*

For the foregoing reasons, Simms' petition for writ of habeas corpus will be denied. Because Petitioner is in custody by virtue of a District of Columbia judgment, he is regarded as a state prisoner for habeas corpus purposes, and thus must obtain a certificate of appealability to pursue an appeal. *See Wilson v. U.S. Parole Comm'n,* 652 F.3d 348, 352 (3d Cir. 2011). Because Petitioner has not made a substantial showing of the violation of a constitutional right in connection with the adverse parole decision, 28 U.S.C. § 2253(c)(2), a certificate of appealability will not be issued. However, our denial of a certificate of

---

[4] In his reply brief to Respondent's supplemental brief, Petitioner adds the argument that offense accountability is an impermissible reason for exceeding the parole guidelines calculation. He cites *Bailey v. Fulwood*, No. 11-CV-435, 2012 WL 5928302, at *8 (M.D. Pa. Nov. 26, 2012), and *Cambrel v. Bledsoe*, No. 08-CV-1684, 2011 WL 3439199, at *10 (M.D. Pa. Aug. 5, 2011). However, neither notice of action mentions offense accountability as a reason for denying parole. Instead, they cite his risk to the community.

11

appealability does not mean Petitioner cannot appeal our ruling. He may do so, as long as he also seeks a certificate of appealability from the court of appeals. *See* Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.

We will issue an appropriate order.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: January 11, 2018